## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHAIM STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>SANJAY K. JHA, ANTHONY J. VINCIQUERRA, JON E. BARFIELD, WILLIAM R. HAMBRECHT, JEANNE P. JACKSON, KEITH A. MEISTER, DANIEL A. NINIVAGGI, THOMAS J. MEREDITH, JAMES R. STENGEL, ANDREW J. VITERBI, MOTOROLA MOBILITY HOLDINGS, INC., GOOGLE, INC., and RB98, INC.<br><br>　　　　　　　　Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |

## CLASS ACTION COMPLAINT

Plaintiff Chaim Stein ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, the following against Defendants (defined below) based upon, among other things, a continuing investigation conducted by and through his undersigned counsel into the facts and circumstances alleged herein, including, without limitation, review and analyses of: (i) the public filings of Motorola Mobility Holdings, Inc. ("Motorola Mobility" or the "Company") and Google, Inc. ("Google") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, public statements, news articles, and other publications disseminated by or concerning Motorola Mobility, Google, their respective related entities, and the Proposed Transaction (defined below); and (iii) the corporate websites of Motorola Mobility and Google:

1

## SUMMARY OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff on behalf of himself and other public shareholders of Motorola Mobility in connection with the announcement that Motorola Mobility will merge with RB98 Inc. ("RB98" or "Merger Sub"), a wholly-owned subsidiary of Google, with Motorola Mobility being the surviving company and surviving the merger as a wholly-owned subsidiary of Google (the "Proposed Transaction"). Plaintiff seeks to enjoin breaches of fiduciary duties and/or the aiding and abetting of those breaches by members of the Company's Board of Directors (the "Board") identified *infra* (collectively, the "Individual Defendants"), as well as Motorola Mobility, Google, and RB98 (collectively, "Defendants") for failing to maximize shareholder value in connection with the Proposed Transaction.

2.      On or about August 15, 2011, Motorola Mobility and Google issued a joint press release announcing their entry into a definitive agreement (the "Merger Agreement") pursuant to which Google will acquire all of the outstanding shares of Motorola Mobility common stock for $40.00 per share in cash (the "Merger Consideration") or a total of approximately $12.5 billion.

3.      The Merger Consideration offered to Motorola Mobility shareholders is inadequate and does not reflect the intrinsic value of Motorola Mobility's common stock.

4.      In addition to the inadequate Merger Consideration, the Merger Agreement includes preclusive deal protection measures that make it unlikely that a better competing offer will materialize.

5.      As described below, the Proposed Transaction is fundamentally unfair to Plaintiff and the other public shareholders of the Company. The Individual Defendants' conduct constitutes a breach of their fiduciary duties owed to Motorola Mobility's public shareholders and a violation of applicable legal standards.

2

6.      As such, Plaintiff seeks to enjoin, preliminarily and permanently, the Proposed Transaction under the terms stated in the Merger Agreement or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' wrongful conduct.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and Defendants are citizens of and domiciled in different states and, given that the Proposed Transaction is valued at $12.5 billion, the amount in controversy exceeds a sum or value of $75,000, exclusive of interests and costs. This action is not a collusive one to confer jurisdiction on this Court.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Motorola Mobility's principal place of business is located at Libertyville, Illinois and is, therefore, a citizen of this District.

## THE PARTIES

9.      Plaintiff is and was, at all relevant times, the owner of Motorola Mobility shares. Plaintiff is and, at all relevant times, has been a citizen and domicile of the State of New York.

10.     Defendant Motorola Mobility is incorporated in the State of Delaware with its principal place of business located at 600 North US Highway 45, Libertyville, IL 60048. Motorola Mobility's portfolio includes converged mobile devices, such as smartphones and tablets based on the Android operating system; wireless accessories; end-to-end video and data delivery; and management solutions, including set-tops and data-access devices. Motorola Mobility common stock is, and at all times relevant hereto was, listed and traded on the NASDAQ under the symbol "MMI."

11.     Defendant Google is a top web property in all major global markets providing innovative search technologies connecting millions of people around the world with information

every day. Google is incorporated in the State of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, CA 94043. Google stock is listed and traded on the NYSE under the ticker symbol "GOOG." All references herein to "Google" include Defendant Merger Sub.

12.     Defendant Merger Sub is incorporated in the State of Delaware and a wholly-owned subsidiary of Google.

13.     Defendant Sanjay K. Jha ("Jha") is Motorola Mobility's Chairman of the Board and Chief Executive Officer ("CEO"), and has held these roles since January 2011 and December 2010, respectively.

14.     Defendant Anthony J. Vinciquerra ("Vinciquerra") is the Company's Lead Director and has served in this role since January 2011.

15.     Defendant Jon E. Barfield ("Barfield") has been a member of Motorola Mobility's Board since January 2011 and is a member of the Board's Compensation and Leadership Committee and Governance and Nominating Committee.

16.     Defendant William R. Hambrecht ("Hambrecht") has been a member of Motorola Mobility's Board since May 2011. He is Chair of the Board's Governance and Nominating Committee.

17.     Defendant Jeanne P. Jackson ("Jackson") has been a member of Motorola Mobility's Board since January 2011. She is a member of the Board's Audit Committee.

18.     Defendant Keith A. Meister ("Meister") has been a member of Motorola Mobility's Board since January 2011. He is a member of the Board's Audit Committee and Compensation and Leadership Committee

19. Defendant Daniel A. Ninivaggi ("Ninivaggi") has been a member of Motorola Mobility's Board since May 2011. He is a member of the Board's Audit Committee.

20. Defendant Thomas J. Meredith ("Meredith") has been a member of Motorola Mobility's Board since May 2011. He is Chair of the Board's Audit Committee and is a member of the Compensation and Leadership Committee.

21. Defendant James R. Stengel ("Stengel") has been a member of the Motorola Mobility's Board since January 2011. He is Chair of the Board's Compensation and Leadership Committee.

22. Defendant Andrew J. Viterbi ("Viterbi") has been a member of the Motorola Mobility's Board since January 2011. He is a member of the Board's Governance and Nominating Committee.

23. The Defendants named above in paragraphs 13-22 are collectively referred to herein as the "Individual Defendants."

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

24. By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Motorola Mobility and owe them unwavering duties of good faith, fair dealing, undivided loyalty, and full and candid disclosure. As alleged herein, they have breached their fiduciary duties by, *inter alia*, failing to maximize shareholder value in a proposed sale of the Company.

25. Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such

transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

     (a)     adversely affects the value provided to the corporation's shareholders;

     (b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

     (c)     contractually prohibits them from complying with and carrying out their fiduciary duties;

     (d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

     (e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

26.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Motorola Mobility, are obligated under applicable law to refrain from:

     (a)     participating in any transaction where the directors' or officers' loyalties are divided;

     (b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; or

     (c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

6

27.     Defendants are also obliged to make full disclosure to Motorola Mobility's shareholders of all material information germane to the issues upon which shareholders are asked to vote or tender their shares. This duty of candor ensures that shareholders have all information that will enable them to make informed, rational, and intelligent decisions about whether to vote or tender their shares.

28.     Plaintiff alleges herein that Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, fair dealing, and candor owed to Plaintiff and other public shareholders of Motorola Mobility.

## CONSPIRACY, AIDING AND ABBETTING, AND CONCERTED ACTION

29.     In committing the wrongful acts alleged herein, Defendants have, collectively and individually, pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

30.     Each Defendant herein aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. Defendants' acts of aiding and abetting, included the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

7

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action, pursuant to Rule 23 of the Rules of the Court of Chancery, on behalf of all holders of the common stock of the Company (except Defendants herein and any person, firm, trust, corporation, or other entity related to, affiliated with, or controlled by any of the Defendants, as well as the immediate families of the Individual Defendants) and their successors in interest, who are or will be threatened with injury arising from Defendants' actions as more fully described herein (the "Class").

32.     This action is properly maintainable as a class action.

33.     The Class is so numerous that joinder of all members is impracticable.  As of August 17, 2011, there were 298,022,521 of the Company's shares issued and outstanding which were owned by hundreds, if not thousands, of public shareholders other than Defendants.  There are questions of law and fact which are common to the Class including, *inter alia*, the following:

(a)     whether the Individual Defendants have fulfilled and are capable of fulfilling their fiduciary duties owed to Plaintiff and the Class, including, but not limited to, the duties of undivided loyalty, independence, due care, honesty, and good faith;

(b)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and other Class members;

(c)     whether Plaintiff and the other members of the Class will be irreparably damaged if Defendants are not enjoined from continuing the conduct described herein, or alternatively, whether they have suffered compensable damages;

(d)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Transaction;

8

(e)     whether the Individual Defendants are unjustly enriching themselves, and other insiders or affiliates of Motorola Mobility;

(f)     whether the Individual Defendants, in bad faith or for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

(g)     whether Defendants aided and abetted the Individual Defendants' breaches of fiduciary duties of undivided loyalty, independence, due care, honesty, and good faith with respect to Plaintiff and the Class as a result of the conduct alleged herein;

(h)     whether the Merger Consideration payable to Plaintiff and the Class under the Proposed Transaction is unfair and inadequate; and

(i)     whether Plaintiff and the Class are entitled to injunctive relief, damages, or other relief.

34.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of Plaintiff are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff will fairly and adequately represent the Class.

35.     Defendants have acted in a manner which affects Plaintiff and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

36.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be

dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

37.    On January 4, 2011, non-party Motorola Inc. distributed all the common stock it owned in Motorola Mobility to its shareholders. Motorola Inc. shareholders received one Motorola Mobility share for every eight Motorola Inc. shares held. As a result of this distribution, Motorola Mobility became an independent, publicly traded company.

38.    Motorola Mobility is comprised of the Mobile Devices and Home segments of the former Motorola Inc. The Company provides innovative technologies, products, and services that enable a broad range of mobile and wireline, digital communication, and entertainment experiences. Its integrated products and platforms deliver multimedia content to mobile devices, televisions and personal computers. Its Mobile Devices segment designs, manufactures, sells, and services wireless mobile devices, including smart phones and media tablets. Motorola Mobility uses the Android operating system, a royalty-free, open-source platform developed by Google, to develop its portfolio of smartphones, which currently has a large offering of applications and services. Its Home segment designs, manufactures, sells, installs, and services television set-top boxes and associated products and services.

### Motorola Mobility's Prospects for Long-term Growth are Good

39.    As set forth below, the Company has performed consistently well and is well positioned for continued future growth.

40.    On July 28, 2011, Motorola Mobility issued a press release reporting strong financial results for the second quarter ended July 2, 2011. The Company reported net revenues of $3.3 billion, up 28 percent from second quarter 2010 with the Mobile Devices division reporting revenues of $2.4 billion and Home division reporting revenues of $907 million, up 41

10

percent and two percent, respectively, from second quarter 2010. Motorola Mobility shipped 11

million mobile devices, including 4.4 million smartphones and 440,000 tablets.

      41.    The July 28, 2011 press release also quoted Individual Defendant Jha touting the

success of the Company:

> In the second quarter, Mobile Devices launched several new smartphones in the
> U.S. and markets around the world. Revenues grew over 40 percent driven largely
> by Latin America and China where sales more than doubled year over year. Our
> Home business delivered another strong performance, and we introduced several
> innovative products and services for next generation multi-screen video solutions.
> With a focus on profitable growth and delivering differentiated LTE smartphones
> and tablets, we expect to achieve profitability in Mobile Devices in the fourth
> quarter and for the full year 2011.

      42.    Motorola Mobility is positioned for future growth and success due to its strong

cash balance of over $3 billion and no debt, other than capital lease obligations, as well as its

strong patent portfolio. As described by the Company in its latest Annual Report filed with the

Securities and Exchange Commission on February 18, 2011 (the "Annual Report"), the

Company has:

> developed an extensive portfolio of intellectual property assets through our
> significant and continued investment in research and development. The
> intellectual property assets held by our Mobile Devices segment include
> approximately 15,200 granted patents and 6,200 pending patent applications,
> worldwide, which are complemented by another approximately 1,900 granted
> patents and 1,300 pending patent applications, worldwide, held by our Home
> segment for a total held by our two segments of approximately 17,000 granted
> patents and 7,500 pending patent applications, worldwide. These patents and
> patent applications are directed to inventions in areas such as wireless, audio,
> video, design and user interface ("UI"). Further, we believe our portfolio of
> patents in 4G will position us well in the upcoming technology transition from 2G
> to 3G.

      43.    As further noted in the Annual Report and reflected by Defendant Jha's recent

comments during the July 28 earnings conference call, Motorola Mobility believes that its

various patents and pending patents separate it from the rest of the Android market because it has

"one of the strongest portfolios of intellectual property assets in the wireless industry" and it plans on using and expanding it to "maintain [its] competitive position."

44.     Indeed, the acquisition of Motorola Mobility will enable Google to "supercharge" the Android ecosystem.   Given the Company's recent strong performance, its strong patent portfolio, its cash holdings, and its positioning for growth, the Merger Consideration is inadequate and significantly undervalues the Company.

45.     Motorola currently holds 17,000 patents, Google holds about 1,000.  As Google's CEO Larry Page said in announcing the deal, "our acquisition of Motorola will increase competition by strengthening Google's patent portfolio, which will enable us to better protect Android from anti-competitive threats from Microsoft, Apple, and other companies."

46.     An article on Bloomberg.com titled "Google Buys Motorola for 'Superpower' Status" is instructive:

> Lacking its own trove of patents to vie with Apple, Microsoft and other companies, Google and its hardware partners were targeted by suits aimed at slowing the adoption of Android smartphones. Adding the 17,000 patents of Motorola Mobility, which has been inventing mobile-phone technology since the industry began, may help Google stanch the onslaught.
>
> "The analogy to a nuclear arms race and mutually assured destruction is compelling," said Ron Laurie, managing director of Inflexion Point Strategy LLC, which counsels companies on purchasing intellectual property. Google and its rivals "look pretty evenly matched at the moment. Google may have become a patent superpower."
>
> The goal of Google's new patent clout is also to act as protection for the handset makers that have been bearing the brunt of the litigation, the company said yesterday.
>
> * * *
>
> **Google Shops Around**
> Before agreeing to buy Motorola Mobility, Google had few patents on mobile-phone technology. The company's research had focused largely on its main search-engine business.

Google, seeking to tilt the balance, has actively sought patents that it said could be used as a deterrent to litigation, culminating in the purchase of Motorola Mobility. Google bought more than 1,000 patents in July from International Business Machines Corp.

"Yesterday you could sue Google and you weren't taking any risks because they didn't have any patents," said Pierre Ferragu, an analyst at Sanford C. Bernstein in London. "Today it's the same as suing Motorola."

## The Proposed Transaction

47.     In a press release dated August 15, 2011, the Company announced that it had entered into a merger agreement with Google pursuant to which Google, through Merger Sub, will acquire all of the outstanding shares of the Company for $40.00 per share in cash.

48.     Google will run Motorola Mobility as a separate business. Defendant Jha, the CEO of Motorola Mobility, will remain as the division's top executive following consummation of the Proposed Transaction. The Proposed Transaction is expected to close by early 2012.

## The Proposed Merger Consideration is Inadequate

49.     Despite the significant value inherent in the transaction for Google, the Board failed to secure a fair price for the Company's public shareholders. Indeed, the Merger Consideration does not reflect the intrinsic value of Motorola Mobility's assets and intellectual property, much less the value of the Company's assets and intellectual property to Google.

50.     Further, at least one Wall Street analyst had a price target of $42 per share before the Proposed Transaction was announced.

51.     Motorola Mobility hastily engaged a sale of the Company without fully exploring its strategic alternatives. Less than a month prior to the announcement of the Proposed Transaction, Carl C. Icahn ("Icahn"), who owns approximately 11.4% of the Company, prodded

13

the Company to explore strategic alternatives. As stated in a Schedule 13D filed by Icahn with

the SEC on July 21, 2011:

> On July 20th and 21st, 2011, the Reporting Persons discussed with the Issuer their
> view that the Issuer should explore alternatives regarding its patent portfolio to
> enhance shareholder value. The Reporting Persons believe that the Issuer's patent
> portfolio, which is substantially larger than Nortel Networks' and includes
> numerous patents concerning 4G technologies, has significant value. In addition,
> there may be multiple ways to realize such value given the current heightened
> market demand for intellectual property in the mobile telecommunications
> industry.

## The Deal-Protection Devices

52.     In addition to the inadequate Merger Consideration, the Proposed Transaction

includes onerous deal-protection provisions.

53.     The Merger Agreement provides for a termination fee of $375 million if the

Proposed Transaction is not consummated. This figure represents approximately 3% of the

Proposed Transaction's enterprise value. This termination fee deters potential suitors from

competing with Google as a superior offer would need to exceed the Merger Consideration by

over $375 million.

54.     The Merger Agreement executed by the Defendants unreasonably and unfairly

restricts the Company from soliciting competitive offers for the Company and eliminates a

market check on Google's offer. The Merger Agreement does this by containing a no

solicitation clause forbidding Motorola Mobility from soliciting competing offers or even

carrying on any pre-existing merger talks. This provision makes it unlikely that a viable

competing offer will emerge.

55.     The Merger Agreement nominally allows the Board to consider a superior offer

from another suitor. However, this "fiduciary out" is strictly a matter of form, with no

supporting substance. The Board is forbidden from soliciting further offers or negotiating with

other potential suitors. Even if a competitor made a viable alternative offer, it is unlikely that such offer would receive meaningful consideration, in light of the fact that the Board has already fully committed to supporting the Proposed Transaction and discouraging other suitors.

56.     Moreover, any unsolicited competing bidder would have to be willing to take on the great expense of conducting due diligence and formulating a proposal within a very limited time frame because the Merger Agreement requires Motorola Mobility to notify Google of any alternative offers, while providing Google with the right to match – rather than exceed – such offers. In conjunction with the onerous termination fee, the matching right gives Google an enormous competitive advantage – in essence, they would be able to pay $375 million less than any other competitor. Since other suitors know that they can be frozen out in this way, it is unlikely that a competing offer will materialize.

57.     The deal protection measures described above combine to render the Proposed Transaction a virtual *fait accompli*, locking shareholders into a transaction that fails to maximize shareholder value, depriving them of their voice, and wresting away their right to enjoy the fruits of Motorola Mobility's success.

58.     Section 5.05 of the Merger Agreement requires Google to indemnify the Company's directors and employees for a period of six years following the close of the Proposed Transaction for all liabilities or claims related to their service or employment with Motorola Mobility or its subsidiaries occurring prior to the closing of the proposed Transaction. This covenant further requires Google to keep in place the Company's directors' and officers' liability insurance policies ("D&O Insurance") in effect at the closing, or purchase a "tail policy" offering coverage at least as favorable as the Company's existing D&O Insurance.

59.     Ultimately, these preclusive deal protection provisions restrict the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The Company's executive officers, including Defendant Jha, have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of the Company's public shareholders. Motorola Mobility's top executives could walk away with hefty compensation packages if they were to leave the company and sell their equity holdings at $40 per share. Defendant Jha's package alone could be worth approximately $80.1 million, comprised of a severance payment of $8.1 million, Motorola Mobility stock worth $40.8 million, and vested and unvested options worth $31.2 million. Chief Financial Officer Marc Rothman's package could be worth about $8.9 million and President Daniel Moloney's package could be worth about $17.8 million.

60.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's public shareholders will suffer absent judicial intervention.

## FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against the Individual Defendants)

61.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

62.     As directors of the Company, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care.  The Individual Defendants' approval of the Proposed Transaction, which will result in a change of control of the Company, imposes fiduciary responsibilities to maximize the Company's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.  The Individual Defendants owe Motorola Mobility's shareholders a duty to maximize shareholder value in connection with the sale of the

corporation. Indeed, the Individual Defendants bear the burden of establishing that the Board made all required reasonable efforts to maximize shareholder value. Because the Proposed Transaction fails to reflect the Company's full intrinsic value, the Individual Defendants have failed to satisfy their burden of establishing that they have maximized shareholder value in connection with the Proposed Transaction.

63.     As discussed herein, the Individual Defendants have breached their fiduciary duties to the Company's shareholders by failing to engage in an adequate sale process, by agreeing to a transaction that undervalues the Company, and by agreeing to preclusive deal protection provisions that will greatly reduce the possibility of the emergence of a superior offer. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive a fair portion of the value of the Company's assets and will be prevented from benefiting from a value-maximizing transaction.

64.     Unless enjoined by this Court, the Individual Defendants and the Company will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction to the irreparable harm of the Class.

65.     Plaintiff and the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Aiding and Abetting
### (Against All Defendants)

66.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

67.     As alleged herein, Defendants aided and abetted the Individual Defendants' breaches of fiduciary duty to Plaintiff and the other members of the Class.

17

68.     As a direct and proximate result of the Defendants' aiding and abetting of the Individual Defendants' breaches of fiduciary duty, Plaintiff and the Class will be unfairly deprived not only of the fair value of their investment in Motorola Mobility but also of a fair process.

69.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the representative of the Class;

B.     Declaring that the Merger Agreement was entered into in breach of the fiduciary duties of the Individual Defendants and that the Merger Agreement is therefore unlawful and unenforceable;

C.     Enjoining the Individual Defendants and the Company, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a fair transaction that does not irreparably harm the Company's shareholders;

D.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

E.     Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed Transaction;

F.      Awarding Plaintiff the costs and disbursements of this action and a reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

G.      Granting Plaintiff and the Class such other and further relief as the Court may deem just and proper.

Dated:  September 1, 2011

**LASKY & RIFKIND, LTD**

By:    /s/ Leigh R. Lasky
Leigh R. Lasky
Norman Rifkind
Amelia S. Newton
351 W. Hubbard Street, Suite 401
Chicago, Illinois 60654
Telephone: (312) 634-0057
Facsimile: (312) 634-0059

*Counsel for Plaintiff*

**OF COUNSEL:**

**WEISS & LURIE**
Joseph H. Weiss, Esq.
Mark D. Smilow, Esq.
Michael A. Rogovin, Esq.
1500 Broadway
16th Floor
New York, NY 10036
(212) 682-3025